## CLARENCE EDWARD DOUGHERTY et al.

*v.*

## CHARLES E. CONNOLLY et al.

[Filed March 23d, 1901.]

1. Testator's will gave his wife a life estate in his realty, with power to sell and invest the proceeds, the income to be hers for life. The widow conveyed to C. part of the property of the estate for an expressed consideration of $1, but no consideration passed. C. then borrowed money of a trust company, giving a mortgage on the land, which was subsequently reconveyed to the widow. The trust company also carried on a title guarantee business, and a memorandum on an application for a guarantee of title made by the mortgagor showed that the consideration for the conveyance to C. was nominal. The parties interested went to the office of the trust company, and there executed the deed and mortgage in the presence of the trust company's attorney, who knew that no passage of consideration took place at that time, and he made no inquiries as to the nature of the transaction.—*Held*, that the trust company was chargeable with knowledge that the transaction was not a *bona fide* or authorized exercise of the widow's power of sale, and hence the mortgage was invalid as against the remaindermen, and bound only the life estate.

2. Where testator's will made his wife executrix and life tenant, giving her power to sell property when advantageous, and reinvest the proceeds, the income to be hers, and she agreed with C. to make a conveyance to him, without consideration, to enable him to raise money by mortgaging the land conveyed, which was thereafter to be reconveyed to her, and such agreement was carried out, and C. conveyed to D., who gave C. a mortgage, and then conveyed the property to the executrix, the deeds and mortgages were void so far as they conveyed anything beyond the life estate of the widow.

3. A widow and executrix, having a life estate in the land of testator, with a right to sell and invest the proceeds, the income to be hers, sold certain land and invested the proceeds without consulting the remaindermen; the investment afterwards turning out to be worthless. Personal

property to the amount of $2,900 came into her hands, for which she never accounted, and she applied the proceeds of a $3,000 life policy to the payment of a mortgage on certain lands.—*Held*, that to the extent to which personal estate or proceeds of real estate applicable to the payment were received by the executrix and by her applied to her use or not accounted for, she must be considered as having applied them to the payment of the debt to her, arising from her redemption of the mortgage, and the facts justifying the conclusion that the mortgage was paid off with the intention of discharging the inheritance under circumstances which made it equitable for her to do so, she was not entitled to be subrogated to the rights of the mortgagee, and hence a mortgagee of her life estate had no such subrogation.

Heard on bill, answers and cross-bills, replications and proofs.

*Mr. John R. Hardin,* for the complainants.

*Mr. Algernon T. Sweeney,* for the defendant Mrs. Dougherty.

*Mr. Thomas N. McCarter,* for the defendant the Fidelity Trust Company.

EMERY, V. C.

Dr. Alexander N. Dougherty, the testator, who died in 1882, by his will devised his real estate to his widow, Henrietta A. Dougherty, for life, and appointed her executrix, with the following power of sale:

"*Third.* If it should be advantageous hereafter during the lifetime of my said wife in the opinion of my executrix hereinafter named to sell all or any portion of my real estate, it is my will and I do hereby direct and order that the same be so sold at the discretion of my executrix aforesaid, either at public or private sale, and I do authorize and empower my said executrix to make such sufficient conveyance as may be required to the purchaser or purchasers of the same, the money arising from such sale or sales to be securely invested and the income thereof to belong to my said wife for her own use during her life."

Subject to this life estate and power of sale, the lands were devised to his four sons, three of whom are the complainants and one of whom is a defendant. Complainants have, or claim, a contingent interest in the share devised to their brother, the defendant, but, for the purposes of the present inquiry, this cir-

Dougherty v. Connolly.

cumstance need not be further noticed. On July 10th, 1895, Mrs. Dougherty, by a deed of that date, executed by herself as executrix, under the power of sale, and also individually, and for an expressed consideration of $1, conveyed the real estate, a house and lot in Newark, to the defendant Connolly. Connolly and his wife executed a mortgage on the lands, on the same date, to the defendant the Fidelity Trust Company, for $6,000, payable in three years from date, with interest. Subsequently, and by deed dated August 10th, 1895, Connolly and wife conveyed the premises to the defendant Dempsey, by deed, with full covenants of warranty, for the consideration of $1, and Dempsey, by deed dated August 24th, 1895, for a like consideration, conveyed the premises to Mrs. Dougherty, by a deed of bargain and sale, without covenants. The deeds from Connolly to Dempsey and from Dempsey to Mrs. Dougherty were recorded on the same day—August 26th, 1895. Dempsey, on the 24th of August, the date of his deed to Mrs. Dougherty, executed a mortgage to Connolly on the premises for $2,500, which was recorded on August 26th, 1895, six minutes subsequent to the record of Connolly's deed to him, and at the same time as his deed to Mrs. Dougherty. This mortgage is still outstanding of record. The bill charges that the power of sale was fraudulently exercised by the executrix for the purpose of raising, by means of a mortgage on the premises, $6,000, which Connolly was to receive and use in a partnership business, in which he and Mrs. Connolly were to be jointly interested, and that, for the purpose of carrying out this scheme of borrowing money and evading the provisions of the will, the premises were to be conveyed by the executrix to Connolly, and after the execution of the mortgage Connolly was to reconvey the lands at once to Mrs. Dougherty; that instead of reconveying at once, as agreed, Connolly held the title for several weeks, and before the reconveyance, and without Mrs. Dougherty's knowledge, conveyed the lands to Dempsey, without consideration, receiving from him the mortgage of $2,500, in fraud of complainants and of Mrs. Dougherty, which was fraudulently retained by Connolly on the reconveyance by Dempsey to Mrs. Dougherty as an apparent lien on the property. It is alleged that no consideration

for any of the conveyances was paid by any of the parties, and that the entire scheme of rasing the money was a fraud on the executrix, by an abuse of her confidence in him, and was a fraud on the complainants' rights. As to the Fidelity Trust Company mortgage, the bill charges that the mortgage was taken with notice of the extent of the power of complainants' rights as devisees and with notice that the power of sale was not properly exercised for the purpose of the advantageous sale, in the exercise of a proper discretion of the executrix, and was made for other and improper reasons, and it is claimed that the nominal consideration of the deed from the executrix to Connolly was notice that the sale was not a *bona fide* sale under the power made for the purpose of procuring funds for investment, and that the trust company received its mortgage with full notice of Connolly's defective title. It is prayed that the trust company mortgage and all the conveyances and mortgages be declared void as against the complainants. The trust company, admitting the execution of the deed from the executrix to Connolly, and its advance to him, by way of mortgage, of the $6,000, alleges that this was advanced in good faith, and without any knowledge of any matters to put it upon inquiry or to charge it with the duty of inquiring as to the actual consideration of the sale, or to inquire into the appropriation of the proceeds of sale, and denies receiving the mortgage with notice that the conveyance to Connolly was made for improper reasons, or without consideration, or that Connolly's title was defective; claims to be a *bona fide* purchaser, and that the mortgage is a valid encumbrance upon the entire fee of the premises, including complainants' interest. The mortgage having become due by reason of the failure to pay installments of interest, the trust company, by way of cross-bill filed against Mrs. Dougherty, prays that if it should be decreed that the mortgage is void as against complainants, Mrs. Dougherty's life estate, which was also conveyed by the mortgage, may be sold. Mrs. Dougherty, as executrix and individually, answers complainants' bill, substantially admitting the charge of the bill, as to the purpose of the conveyance to Connolly and that no consideration was received by her for the deed, and she also files a cross-bill against the trust

company, Connolly and Dempsey to set aside the deed from Connolly to Dempsey and the mortgage from Dempsey to Connolly, as given in fraudulent violation of Connolly's agreement with her to transfer the property to her immediately after the mortgage, and also to set aside the trust company mortgage, because it was taken with notice that the deed from her to Connolly was without consideration, and that the mortgage was made for Connolly's benefit only. The defendants Connolly and wife and Dempsey do not appear to answer either the bill or cross-bill. The evidence of Mrs. Dougherty, corroborated by the papers and documents in the case, shows, beyond dispute, that, as between Connolly and Mrs. Dougherty, the transaction was not intended as a *bona fide* sale of the property, but as a method of raising money, by way of mortgage on the premises, which was to be advanced to Connolly, who was to repay it, and that Mrs. Dougherty (who was to continue in possession of the property and receive its rents) was to receive some benefit from this advance to Connolly on the mortgage, either by way of interest, to be also paid to her, or a share of the profits in a partnership with Connolly. So far as relates to these defendants, therefore, the deeds to Connolly and Dempsey and the mortgage from Dempsey to Connolly must be set aside as fraudulent and void, and so far as they assume to convey anything beyond the life estate of Mrs. Dougherty, must be declared not to affect the rights of the complainants or of the defendant Alexander Garthwaite Dougherty, and the mortgage from Dempsey to Connolly must also be declared void as against Mrs. Dougherty and the defendant trust company as claiming title through her. The real issue contested at the hearing was as to the validity of the trust company mortgage on the estates of the complainants, it being conceded that the mortgage was valid as to Mrs. Dougherty's life estate. The question is whether the circumstances attending the execution of the mortgage and the advance of the money were such as to charge the trust company with notice that the sale to Connolly was not intended as a *bona fide* execution of the power of sale. The evidence connecting the trust company, or any of its officers, with such notice is substantially as follows: On July 2d, 1895, and before he had

received a deed, Connolly made a written application to the trust company for a loan of $7,000 upon the premises. The application, as appears by the signature of a member of the board of directors of the company, was reported upon favorably for $6,000. This report was dated July 15th, 1895, but the application must have been practically acted on and agreed to at once, for on July 3d a written application, bearing this date, signed by Connolly, was made to the trust company (which also carried on the business of guaranteeing titles) for a guarantee of title in the sum of $6,000, the amount agreed to be loaned. As appears by this paper, the seller of the property was to be Henrietta A. Dougherty, executrix of Alexander N. Dougherty, under will probated December 18th, 1889, and it is stated in the application, "Mrs. Dougherty is to sell to Chas. E. Connolly, Cons. $1." Upon the application is also an endorsement, "Will call Tuesday A. M., to execute papers." On July 10th, 1895, Mrs. Dougherty, in company with Connolly and his wife, went to the office of the trust company, and the deed and mortgage were there executed in the presence of Mr. John J. Joyce, an attorney-at-law, who was, at that time, the assistant, or acting, title officer of the company. He was the subscribing witness to the deed and mortgage and took the acknowledgments. Mr. Joyce says that he remembers, in a general way, that Mrs. Dougherty and Mr. Connolly were there, and that there was a settlement of certain matters connected with the title and the loan, but that he cannot recall anything specifically said at that time. He represented the company in the transaction, and no other person representing the company was present. Mrs. Dougherty, the only other witness called as to the interview, says that only herself, Connolly and his wife and the gentleman who took the acknowledgments were present, and that Mr. and Mrs. Connolly signed the mortgage and their acknowledgments were taken, and says that there was no talk at all about the matter, and that she went there for this purpose and nobody asked her anything. She further says that, after acknowledgments were taken, she and Mrs. Connolly went to the station with Mr. Connolly, who left them there, while he returned to receive the money on the mortgage. The money for the loan

was paid by a check of the company, signed by its treasurer, for $5,932.68, which was drawn after Mr. Joyce had drawn and signed an order for its payment. The check was for the amount of the loan ($6,000), less the charges for searches, guarantee of title, and the expenses for searches, &c. ($67.32), which expenses included, as appears by the endorsements on the application for guarantee of title, the expense of drawing the deed ($3), and also the bond and mortgage ($5) and for recording both papers. The check was paid to Connolly in cash over the counter, and after receiving the money he joined his wife and Mrs. Dougherty at the station and accompanied them to New York, and on the same day Mrs. Dougherty went with Connolly to his counsel's office, in New York, and signed the partnership articles with him. Throughout the entire transaction relating to the sale and loan Mrs. Dougherty had no counsel specially representing her. From the memoranda on the application for guarantee of title, made as to the future attendance of the parties to execute the papers, and of the charges of the company for drawing them, it would seem that Mr. Joyce, or some other agent of the company, represented or acted for all parties for the purpose of drawing the papers to perfect the title in Connolly as mortgagor to the company. The deed itself and the memorandum on the guarantee show that the company had notice that the consideration in the deed was nominal, and Mr. Joyce, the trust company's officer, having taken charge of the actual transfer of the title from the executrix to Connolly, knew,· not merely from the recital in the deed, but from what actually occurred in his presence and under his direction, that the transfer of the title had been prepared and perfected without the payment of a dollar to the executrix. Actual payment or securing of the consideration would, in the ordinary and due course of business, have taken place at the delivery of the deed, and certainly before the execution and delivery of a mortgage by the grantee to a third person, in the presence of the grantor, which would, or might, postpone her lien for the purchase-money if it had not been paid. Under these circumstances, and with the knowledge that the ordinary course of business was departed from, Mr. Joyce was, as a prudent man, put upon inquiry as to whether the executrix

was making a *bona fide* sale in the exercise of her power, or whether the transfer of title, like the consideration, was nominal only, and the whole transaction was only a method of obtaining a loan for Connolly on the premises by a mortgage to the trust company. The failure to make inquiries seems, under all the circumstances, to warrant the inference that if Mr. Joyce. did not know the real intention of the parties, he at least intentionally refrained from making inquiries, in order that he might not receive information as to the intent. In such case the negligence would, without question, be so gross as to charge him with knowledge of the intent. But, if without any such intentional failure to make inquiries, he was, as a reasonably prudent man, put upon inquiry as to the real intent of the transfer, then, in the absence of any sufficient explanation as to why the inquiries were not made, the company are chargeable with notice of the facts which. would have been ascertained from an inquiry duly prosecuted. No inquiries whatever appear to have been made by Mr. Joyce, neither has any explanation been given of the failure to make them. In the absence of such inquiry or explanation, it must be conclusively presumed against the party chargeable with the duty of inquiry that the real facts relating to the transfer would have been ascertained. That the effects of notice of circumstances which should put a purchaser upon inquiry as to the fraudulent intent of a conveyance is equivalent to notice of the intent, is settled. *Tantum* v. *Green,* 6 C. E. Gr. 364, 369 et seq. (*Errors and Appeals, 1869*) ; *De Witt* v. *Van Sickle,* 2 Stew. Eq. 209, 215 (*Vice-Chancellor Van Fleet, 1878*) ; *Moore* v. *Williamson, 17 Stew. Eq. 496, 503 (Chancellor McGill, 1888*). These were cases where the intent, with notice of which they were charged, was that of defrauding creditors, but the principle does not depend upon the particular character of the fraudulent intent, and the rule itself is only a special application of the general rule relating to the doctrine of notice stated by Chancellor Kent (*4 Com.* *179*), and approved in *Hoy* v. *Bramhall, 4 C. E. Gr. 563, 572 (Errors and Appeals, 1868*), in reference to the effect of notice of circumstances charging a person with the duty of inquiry: "The general doctrine is that whatever puts a party upon inquiry amounts, in judgment of

law, to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." See, also, *2 Pom. Eq. Jur.* ¶ *608.* The whole question of fact to be decided, therefore, on this branch of the case is whether Mr. Joyce was, under the circumstances of the case, as a reasonably prudent man, put upon inquiry as to this transfer being a *bona fide* exercise by the executrix of the power of sale. Reaching the conclusion that he was chargeable with the duty of this inquiry, the trust company, whom he represented, must be held chargeable with notice of the fraudulent character of the transfer. Its mortgage, therefore, so far as relates to the conveyance of any interest in the lands in question, other· than the life estate of Mrs. Dougherty, must be declared void. As to Mrs. Dougherty's estate, the company is entitled to a decree for sale to pay the amount due upon the mortgage. The second branch of the case relates to the extent of Mrs. Dougherty's interest in the lands applicable to the payment of the mortgage, and presents for decision the questions arising under the amended answer and cross-bill which the trust company obtained leave to file at the hearing.

This claim is that the trust company, as the mortgagee, through Connolly, of the life estate of Mrs. Dougherty in the premises, is, as against the complainants, the remainderman in fee, entitled to be subrogated to the benefit of a mortgage on the property created by the testator and paid off by the tenant for life, after her husband's death, with her own money. The substantial facts appearing by the pleadings and proofs relevant, or claimed by either counsel to be relevant, to this issue of subrogation are as follows: Dr. Dougherty's will bequeathed to his wife his entire personal estate and devised his real estate to her for life, with the power of sale above referred to, and the remainder over to his four sons. Mrs. Dougherty was also appointed sole executrix, and on January 3d, 1883, filed an inventory, in which the personal property (being furniture, books, office fixtures) was appraised at $1,530, and the accounts due ($2,800) were appraised at $1,800. No account has ever been filed by the executrix, and the amount realized from the

personal estate, according to the evidence on this hearing, was about $2,200, being $1,000 from the collection of accounts, and $1,000 to $1,200 from the sale of the furniture, &c. This latter sum, according to the statement of the executrix, does not include the value of the library, surgical instruments and horse and carriage (together worth over $700), which were given by Mrs. Dougherty to the complainant Dr. Arthur Dougherty, who continued his father's practice, collected the accounts due to his father and turned them over to his mother. The testator's life was insured for the sum of $5,000, the policy being payable to his wife, and the Mutual Benefit Insurance Company held a mortgage upon the Park street property (the only real estate in New Jersey of which testator died seized), originally given by the testator himself for $5,200, but upon which, at the time of his death, about $3,000 was due. On or about February 21st, 1883, Mrs. Dougherty received the insurance money and paid off the mortgage and had the same canceled of record. In the early part of the following year (1884) the executrix sold real estate in North Carolina, of which the testator died seized, for the sum of $4,000 in cash, which was received by her and invested, in her own name, in western mortgages, which have turned out worthless, so that this amount has been lost to the estate. None of the complainants appear to have been advised of or consulted with reference to the sale of the North Carolina lands or the investment of the proceeds. No account has ever been filed by the executrix, neither had she, up to the time of the transfer to Connolly, nor has she since, offered to account to the remaindermen for the personal estate or the proceeds of the real estate, nor has she ever asked from any of them contribution or subrogation for the amount paid on the mortgage. Mrs. Dougherty, considered merely as the life tenant of the real estate, subject to an encumbrance created by the testator himself, and devised to her for life, was undoubtedly entitled to redeem the mortgage, and, upon the payment of the mortgage, to hold it uncanceled, if she chose, and to be subrogated to the rights of the mortgagee. As against the personal representative of the testator, this right of subrogation extends to the immediate payment of the mortgage debt, inasmuch as the personal estate is the

primary fund for the payment of mortgage debts created by the testator himself. *McLenahan* v. *McLenahan, 3 C. E. Gr. 101, 103 (Chancellor Green, 1866)*; *Campbell* v. *Campbell, 3 Stew. Eq. 415 (Chancellor Runyon, 1879)*; *Coudert* v. *Coudert, 16 Stew. Eq. 407, 409 (Vice-Chancellor Bird, 1887)*. And if there is no personal estate, and the lands encumbered have been sold and all the estates in the land are represented by funds in court, then the life tenant redeeming is entitled, as against the remaindermen, to immediate payment of the principal of the mortgage out of the funds in court, and will not be barred by her cancellation of the mortgage through inadvertence or ignorance. *Kocher* v. *Kocher, 11 Dick. Ch. Rep. 545 (Vice-Chancellor Pitney, 1898)*. But the present case involves the further additional questions: (1) whether the life tenant, being herself executrix, and having received sufficient personal estate to discharge the mortgage, can, in any event, call on the remaindermen to redeem without accounting for the personal estate, which is the primary fund, both as to her and the remaindermen, for discharging the mortgage. If the life tenant is not thus first to account as executrix, then (2) whether she can call on the remaindermen to redeem by paying the principal at once, during the continuance of the life estate in the lands, or whether, as to the principal, the payment is merely the charge of a debt in her favor upon the lands, payable by the remaindermen upon receiving the estate under the will. If payable at once, then (3) whether this right to payment or subrogation, as against the remaindermen, passed to her grantee (Connolly) by the conveyance of the life estate and also to Connolly's mortgagee, and whether, on the bill to foreclose the mortgage, and in advance of any sale under the mortgage, it can be declared that such right did pass by the mortgage of the grantee as against the estate claimed in remainder. As to the last question: In *Keene* v. *Munn, 1 C. E. Gr. 398 (Chancellor Green, 1863)*, it was held that the alienee or mortgagee of an heir or devisee, did not, merely as such, succeed to the original equity of the heir or devisee to have the debt discharged out of the personal estate. And where, as here, the question of marshaling the assets for the payment of the debt, to which subrogation is claimed, is

necessarily connected with the question of subrogation, my present view is that the right to subrogation for payment of the principal, if it existed at all, did not pass merely by alienation of the life estate after the payment of the encumbrance, without such an assignment of the debt or claim itself as would, either expressly or by implication, carry with it an assignment of the charge securing the debt. As to the second question (the right to require immediate payment by the remaindermen of the principal sum) : the authorities, as to the rights of a life tenant to redeem, so far as I have examined them, seem to establish that the life tenant's right of redemption is prior to that of the remaindermen, but that, inasmuch as his right of redemption is based on the rights in the lands given by the will, his redemption is allowed for the primary purpose of carrying out the trusts of the will for all parties, the remaindermen as well as the life tenant, and therefore the life tenant's title held under the mortgage, or by the mortgagee's reconveyance, if one is made, is a title upon the trusts of the will, and the reconveyance will be directed to be made upon these trusts. The remaindermen, therefore, cannot be called upon to redeem the principal before the termination of the life estate, and, in the meantime, the life tenant holds a charge on the lands for the principal paid, which, upon his death, is enforceable by his personal representative or other assignees of the claim. *Wicks* v. *Scrivens, 1 Johns. & H. 215; S. C., 4 Chit. Eq. Dig. 4068, 1; Pearce* v. *Morris, L. R. 5 Ch. App. 227, 230 (1869)* ; *2 Seton Dec. 1052,* and cases cited; *Fish. Mort. *113; Asb. Mort. 280; Jones Mort. (5th ed.)* ¶ *1065.*

But without putting the decision of the case upon either of these points (as to the assignability of the claim, or the right to immediate payment), my conclusion is that the right to subrogation could not, on the facts appearing in this case, have been enforced by the life tenant against the remaindermen at the time of the conveyance to Connolly, and therefore no such right passed to Connolly or his mortgagee. In the *first* place, the personal estate was bound to exonerate the land from the burden of the mortgage, and the remaindermen, as well as the life tenant, were entitled to have recourse to the personal estate for payment.

The remaindermen cannot be deprived of this recourse by the failure of the life tenant, who was herself the executrix, to apply the personal estate for that purpose, and before any charge upon the lands in her favor by way of subrogation to the mortgagee could be declared, she would be bound to account for the personal estate and apply it in payment. And to the extent to which personal estate, or proceeds of real estate applicable to the payment, were received by the life tenant, as executrix, and by her applied to her own use, or are not accounted for, she must, in their favor, be considered as having applied them to the purpose with which they were primarily chargeable, viz., the payment of the debt to her, arising from the payment or redemption of the mortgage. In the *second* place, the facts in the case justify the conclusion that the mortgage was paid off and canceled with the intention of discharging the inheritance and under circumstances which made it equitable for her to do so. If so, the charge could not be reinstated or revived by a subsequent change of mind (*Morley* v. *Morley, 5 De G. M. & G. 610, 624 (Lord-Chancellor Cranworth, 1855*), or without showing fraud or mistake in fact. *Toplis* v. *Vonder Heyde, 4 Younge & C. 173, 180 (1840)*. In the latter case, a second wife, taking large benefits under her husband's will, paid off a mortgage on lands devised to her for life, with remainder to the husband's children by a former marriage, and by her consent the mortgage term was assigned to attend the inheritance. It was held that the payment was, *prima facie*, a gift to the remaindermen, and that the wife could not afterwards set aside the gift, except upon the ground of fraud or mistake in fact. *A fortiori* must the payment be considered as made for the benefit of the remaindermen, where this payment was a duty, which, as executrix, the life tenant was bound to perform, and which a court of equity will assume was performed. Her cancellation of the mortgage must be taken to have been made in the performance of her duty as executrix, and the remaindermen could not, under these circumstances, be deprived of the benefit to their estate, resulting from the cancellation, on the application of the life tenant herself. The subsequent assignee of her life estate, with notice of the cancellation, cannot stand in any better position than the life tenant

herself. The amended cross-bill must, therefore, be dismissed, so far as it seeks a declaration or decree that the mortgage of the life estate is subrogated to the payment of the principal sum of the mortgage as a charge upon the lands prior to the estate in remainder. The trust company is entitled to a decree for sale of the life estate to pay the amount due upon its mortgage.